# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 3:98-cr-336-HLA-JBT

MICHAEL DELANCY  ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)

## **O R D E R**

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED

Defendant Michael Delancy is a 66-year-old inmate incarcerated at Coleman Medium FCI, serving a 30-year term of imprisonment for his role as the head of a 14-year-long conspiracy to distribute cocaine, cocaine base, and heroin. (See Doc. 468, Amendment 782 Memorandum and PSR).[1] According to

---

[1] Defendant was convicted following a jury trial, but the jury made no findings as to the drug type or drug quantity. (Doc. 249, Jury Verdict; see also Doc. 1, Indictment at 1–2). Originally, Defendant was sentenced to life in prison based on a judge-made finding that the offense involved at least 50 grams of cocaine base, making the crime punishable under 21

the Bureau of Prisons (BOP), he is scheduled to be released from prison on January 4, 2026. Defendant seeks early release under 18 U.S.C. § 3582(c)(1)(A) because of the Covid-19 pandemic, his age, and his medical conditions, which include hypertension, stenosis and partial occlusion of the carotid artery without cerebral infarction, "prediabetes," and chronic hepatitis C without hepatic coma. (Doc. 482, Motion for Compassionate Release). The United States has responded in opposition (Doc. 483, Response), and Defendant filed a reply brief (Doc. 486, Reply).

A movant for compassionate release bears the burden of proving that a sentence reduction is warranted. United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. Jun. 7, 2019); cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (a movant under § 3582(c)(2) bears the burden of proving that a sentence reduction is appropriate). The statute provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

---

U.S.C. § 841(b)(1)(A) (1998). (See Doc. 264, Judgment). On direct review, the Eleventh Circuit Court of Appeals determined that it was error under Apprendi v. New Jersey, 530 U.S. 466 (2000), for the Court, rather than the jury, to make a finding as to the drug type or drug quantity that increased the statutory maximum penalty. (Doc. 297, USCA Opinion at 29–40); United States v. Delancy, 265 F.3d 1062 (11th Cir. 2001) (Table). Therefore, the court of appeals remanded the case for resentencing consistent with 21 U.S.C. § 841(b)(1)(C), which has no threshold quantity and applies regardless of whether the substance is heroin, cocaine, or cocaine base. At resentencing, this Court imposed the statutory maximum penalty under § 841(b)(1)(C) and § 851, which was (and still is) 30 years in prison.

receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... if it finds that extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). "Because the statute speaks permissively and says that the district court 'may' reduce a defendant's sentence after certain findings and considerations, the court's decision is a discretionary one." United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021). As the Third Circuit Court of Appeals has observed, the mere existence of Covid-19 cannot independently justify compassionate release, "especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The Court assumes, for the sake of discussion, that "extraordinary and compelling reasons" exist at this moment to reduce Defendant's sentence based on the Covid-19 pandemic, his age, and some of his underlying conditions. According to the Centers for Disease Control (CDC), age itself is a factor that increases the risk of severe illness from Covid-19.[2] In addition, conditions like cerebrovascular disease, chronic liver disease (such as hepatitis C), and hypertension can increase the risk of serious infection.[3]

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[3] According to the CDC, however, there is only "mixed evidence" that liver disease or high blood pressure affect the risk of developing severe Covid-19. https://

3

Nevertheless, several considerations militate against granting compassionate release. For one, the record reflects that Defendant's medical conditions are stable, well-monitored, and well-managed with medication. See Response at 7–12; (Doc. 483-2, BOP Medical Records); (Doc. 482-3, Def. Exhibit C). There is no indication that his conditions impair his ability to function or provide self-care in the prison environment. Indeed, Defendant is classified as a Care Level 2 "stable, chronic care" inmate (Doc. 482-4, Def. Exhibit D at 3), which means he is a stable outpatient whose "conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring."[4] Second, the BOP has implemented extensive precautions to contain the spread of Covid-19. Although these measures have not completely prevented Covid-19 from impacting Defendant's facility, they appear to be reasonably working. According to the BOP's latest data, zero inmates and only one staff member at Coleman Medium FCI are currently positive for Covid-19; 329 inmates and 54 staff members have recovered; and three inmates (out of 1,341 total) have died of the virus.[5] Third, the BOP is in the process of implementing its Covid-19 vaccination program. Although Defendant has not

---

www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

[4] Care Level Classification for Medical and Mental Health Conditions or Disabilities at p. 2, Federal Bureau of Prisons Clinical Guidance (May 2019), available at https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf.

[5] https://www.bop.gov/coronavirus/. Last accessed April 29, 2021.

4

yet been offered the Covid-19 vaccine, this is because "he is deemed lower on the initial priority list than others" due to his age and lack of respiratory issues. (Doc. 488, Update Regarding Vaccination). Roughly 40% of all inmates at the Coleman prison complex have been fully inoculated, in addition to 514 staff members.[6] As more inmates become vaccinated against Covid-19, the more the inmate population will be protected from coronavirus. It is only a matter of time before Defendant is offered the Covid-19 vaccine, and the Court hopes he will take advantage of that opportunity when it arrives.[7]

Moreover, and in any event, the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A). Defendant was the organizer and leader of a 14-year-long conspiracy to distribute cocaine, cocaine base, and heroin throughout Florida and Georgia. PSR at ¶¶ 6–22. From 1984 to 1998, Defendant supervised and employed numerous people with titles like "lieutenant," "gunman," and "server" to

---

[6] https://www.bop.gov/coronavirus/. According to the BOP, 2,134 inmates at the Coleman Federal Correctional Complex have been fully inoculated, representing 40.6% of the sum of all inmates at Coleman I USP, Coleman II USP, Coleman Medium, and Coleman Low, which is 5,260 inmates at the last count.

[7] The Court recognizes that several circuit courts have concluded that U.S.S.G. § 1B1.13 is not an applicable policy statement for defendant-initiated motions for compassionate release, and therefore does not bind district courts. See, e.g., United States v. Aruda, No. 20–10245, 2021 WL 1307884 (9th Cir. Apr. 8, 2021) (published) (collecting cases); United States v. Brooker, 976 F.3d 228 (2d Cir. 2020). The Eleventh Circuit Court of Appeals has not yet ruled on this issue, though the matter is pending in several cases. The Court's decision does not depend on the resolution of this issue because it would reach the same conclusion regardless of whether it is bound by § 1B1.13.

5

distribute his narcotics, which were sold to users in the organization's trademark pink and white capsules. The amount of drugs involved was enormous, yet consistent with an operation that lasted nearly a decade and a half. The 2002 PSR did not pinpoint a drug quantity, but stated that "the quantities of heroin and crack cocaine well exceeded the maximum quantities listed on the drug quantity table at § 2D1.1(c)," PSR at ¶ 27, meaning it "well exceeded" 30 kilograms of heroin <u>and</u> 1.5 kilograms of cocaine base, <u>see</u> U.S.S.G. § 2D1.1(c)(1) (2001). In 2016, the Court denied Defendant's motion for a sentence reduction under Amendment 782 to the Sentencing Guidelines, concluding that the amendment did not affect his base offense level of 38 under the drug quantity table. (<u>See</u> Doc. 471, Order Denying Motion for Retroactive Application of Sentencing Guidelines Pursuant to Amendment 782; Doc. 468, Amendment 782 Memorandum at p. 1; Doc. 470, Notice by Federal Public Defender at ¶ 4 ("[B]ased on undersigned counsel's thorough and diligent review of the record, … undersigned counsel cannot argue in good faith that Defendant is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 782 … because a two level reduction under Amendment 782 would not have the effect of lowering Mr. Delancy's base offense level below 38.")). In other words, the Court implicitly found that the offense involved at least 25.2 kilograms of cocaine base and/or at least 90 kilograms of heroin. <u>See</u> U.S.S.G. § 2D1.1(c)(1) (2015). Such quantities are consistent with an organization that

sold, on average, "approximately 300 capsules of heroin and 200 capsules of cocaine each day" for 14 years, among other dealings. PSR at ¶ 10 (emphasis added).[8] In view of all the § 3553(a) factors, reducing Defendant's 30-year sentence to time served would fail to uphold the statutory goals of sentencing.

It is useful to contrast this case with one where the Court recently granted relief under § 3582(c)(1)(A). See United States v. Jerry Layne Canty, No. 3:94-cr-169-HLA-MCR, 2021 WL 1526351 (M.D. Fla. Apr. 19, 2021). Canty, like Defendant, had been convicted of a serious controlled substance offense, which involved 23.17 kilograms of cocaine base and 4.27 kilograms of powder cocaine. Id. at *5. However, Canty was 70 years old, he suffered from a fractured hip and end-stage renal disease with a terminal prognosis (among several other conditions), and Canty had been in custody for over 26 years. Id. at *3-4, 6. Indeed, the Court found that Canty's conditions were sufficiently serious that he had "demonstrated extraordinary and compelling circumstances independent of, and without regard to, the Covid-19 pandemic." Id. at *4. Moreover, the Court noted that Canty had been sentenced to a mandatory term of life in prison that would no longer apply under the First Step Act. Id. at *7. By contrast, Defendant's 30-year prison sentence under 21

---

[8] In other words, over the life of the conspiracy, Defendant's organization would have sold (roughly) more than 1.5 million capsules of heroin (300 capsules per day x 365 days x 14 years) and more than one million capsules of cocaine (200 capsules per day x 365 days x 14 years) to users and/or lower-level dealers.

7

U.S.C. § 841(b)(1)(C) has not been affected by the Fair Sentencing Act of 2010 or the First Step Act of 2018. Compare 21 U.S.C. § 841(b)(1)(C) (2018) with 21 U.S.C. § 841(b)(1)(C) (1998). Ironically, Defendant received a shorter sentence than Canty even though Defendant's offense involved a longer running conspiracy and a greater drug quantity.

The Court has considered each of the parties' arguments and exhibits. In consideration of all the circumstances, Defendant's Motion for Compassionate Release (Doc. 482) is **DENIED**.[9]

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of May, 2021.

BRIAN J. DAVIS
United States District Judge

lc 19
Copies:
Counsel of record
Defendant

---

[9] To the extent Defendant requests that the Court order a direct transfer to home confinement, the Court cannot grant that request because the Attorney General has exclusive jurisdiction to decide which prisoners to place in the home confinement program. See United States v. Alvarez, No. 19-cr-20343-BLOOM, 2020 WL 2572519, at *2 (S.D. Fla. May 21, 2020); United States v. Calderon, 801 F. App'x 730, 731-32 (11th Cir. 2020) (a district court lacks jurisdiction to grant a request for home confinement under the Second Chance Act).